IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| GREGORY KELLY and ANNETTE B. KELLY, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO. 2:25-cv-825-RAH-JTA (WO) |
| ALABAMA STATE PORT AUTHORITY dba Alabama State Port Authority, et al., | ) ) ) ) | |
| Defendants. | ) ) | |

**ORDER AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Before the court[1] is the amended complaint filed by *pro se* Plaintiffs Gregory Kelly and Annette B. Kelly. (Doc. No. 5.) Also before the court is Plaintiffs' November 14, 2025 motion entitled "Plaintiffs' 2nd Request for A Stay Order and/or Request for Mental Health Breaks Due to Mental Illness."[2] (Doc. No. 13.) For the reasons stated below, the motion for a stay order is due to be denied. Further, the undersigned recommends dismissal of this action without prejudice for failure to comply with court orders and failure to prosecute. In addition, the undersigned recommends the sanctions previously imposed on Gregory Kelly

---

[1] Pursuant to 28 U.S.C. § 636, this case is referred to the United States Magistrate Judge for consideration and disposition or recommendation on all pretrial matters as may be appropriate. (Doc. No. 4.)

[2] On November 18, 2025, the court held an in-person status conference on the motion to stay. Plaintiffs were ordered to attend. They did not.

for vexatious litigation be expanded to provide that, in the event Gregory Kelly <u>or anyone acting in concert with him</u> files a shotgun complaint in the future, after appropriate review, the Court will summarily dismiss the pleading and the action without prejudice.

## I.    JURISDICTION

This court has subject matter jurisdiction over this action based on federal question jurisdiction because Plaintiffs assert causes of action arising under the Constitution and laws of the United States. 28 U.S.C. § 1331. The court also may exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367(a).

## II.    STANDARD OF REVIEW

A.    Motion for Stay

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* at 254–55. A litigant seeking a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Id.* at 255. "The decision to grant a request for a stay of a matter is within the discretion of the court." *Firehouse Gallery, LLC v. Phillips*, No. 8:09-cv-698-T-17-MAP, 2010 WL 11507474, at *3 (M.D. Fla. Feb. 16, 2010).

B.      Dismissal for Failure to Comply with Court Orders

"If a plaintiff fails to comply with an order to cure the shotgun[3] pleading issues, the case may be dismissed with or without prejudice pursuant to Rule 41(b) of the Federal Rules of Civil Procedure and the court's inherent powers to ensure compliance with its orders." *Kelly v. Water Works & Sanitary Sewer Bd. of City of Montgomery*, No. 2:24-cv-348-RAH-JTA, 2025 WL 1271298, at *2 (M.D. Ala. May 1, 2025), *report and recommendation adopted*, No. 2:24-cv-348-RAH, 2025 WL 1461271 (M.D. Ala. May 21, 2025); *see Sullivan v. Prattville Health & Rehab., LLC*, No. 3:22-cv-702-RAH-JTA, 2024 WL 2755683, at **10-11 (M.D. Ala. May 29, 2024) (Order and Recommendation of the Magistrate Judge) (collecting cases), *report and recommendation adopted*, 2024 WL 943453 (M.D. Ala. Mar. 5, 2024). Whether to dismiss a complaint under Rule 41(b) "is a matter committed to the district court's discretion." *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1240 n.14 (11th Cir. 2009) (citing *Gratton v. Great Am. Commc'ns*, 178 F.3d 1373, 1374 (11th Cir. 1999)). "The legal standard to be

---

[3] Although not an exhaustive list, shotgun pleadings generally commit one or more of the following errors: (1) "containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint;" (2) "being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action;" (3) "not separating into a different count each cause of action or claim for relief;" and (4) "asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1322–23 (11th Cir. 2015) (footnotes omitted). "The unifying characteristic of all types of shotgun pleadings is that they fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* (footnote omitted).

applied under Rule 41(b) is whether there is a 'clear record of delay or willful contempt and a finding that lesser sanctions would not suffice." *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985) (quoting *Jones*, 709 F.2d at 1458). If a court finds a clear record of delay or contumacious conduct by the plaintiff, dismissal for failure to comply with court orders may be a dismissal with prejudice. *See McKinley v. F.D.I.C.*, 645 F. App'x 910, 911 n.3 (11th Cir. 2016) (citing *McKelvey v. AT & T Techs., Inc.*, 789 F.2d 1518, 1520 (11th Cir. 1986)). Dismissal with prejudice "is a sanction of last resort, applicable only in extreme circumstances, and generally proper only where less drastic sanctions are unavailable." *McKelvey*, 789 F.2d at 1520.

## C.    Imposition of Sanctions on Vexatious Litigants

"The legal process is part of the structure of the community, both federal and state." *In re Martin-Trigona*, 139 B.R. 69, 70 (D. Conn. 1992). "It is intended to ensure the rights of the community's members and to resolve, in accordance with the law, those disputes the parties are not able to resolve between or among themselves." *Id*. Because vexatious litigation diverts significant judicial resources to time-intensive management of contumacious conduct and frivolous litigation, sanctions for vexatious conduct "may be necessary to protect both the courts and its staff, as well as the rights of all litigants in the federal system." *Barash v. Kates*, 586 F. Supp. 2d 1323, 1325 (S.D. Fla. 2008) (citing *Procup v. Strickland*, 792 F.2d 1069, 1071–72 (11th Cir. 1986)); *see also Procup*, 792 F.2d at 1072 ("Every lawsuit filed, no matter how frivolous or repetitious, requires the investment of court time, whether the complaint is reviewed initially by a law clerk, a staff attorney, a magistrate [judge], or the [district] judge."); *In re Martin-Trigona*, 139 B.R. at

4

70 (finding a vexatious litigant's conduct had "subvert[ed] . . . substantially the purposes of the legal process"). Therefore, "'[f]ederal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from [vexatious] conduct which impairs their ability to carry out Article III functions.'" *Shell v. U.S. Dep't of Hous. & Urb. Dev.*, 355 F. App'x 300, 308 (11th Cir. 2009) (quoting *Martin–Trigona v. Shaw* ("*Martin-Trigona*"), 986 F.2d 1384, 1386–87 (11th Cir. 1993)).

When a litigant engages in vexatious conduct that hinders the court's mission, "sanctions may be imposed pursuant to Rule 11 of the Federal Rules of Civil Procedure, this court's inherent authority to manage its own docket 'so as to achieve the orderly and expeditious disposition of cases' and compliance with its orders, . . . the court's inherent authority to . . . sanction . . . conduct that abuses the judicial process, Rule 41(b) of the Federal Rules of Civil Procedure,[4] and [the All Writs Act,] 28 U.S.C. § 1651." *Lietzke v. City of Montgomery*, No. 2:20-cv-01033-MHT-JTA, 2023 WL 11817847, at *8 (M.D. Ala. May 3, 2023) (citations omitted), *report and recommendation adopted sub nom. Lietzke v. City of Montgomery, AL*, No. 2:20-cv-1033-ECM, 2023 WL 11818130 (M.D. Ala. Aug. 21, 2023). "Courts can be creative in fashioning appropriate injunctions against abusive litigation tactics." *Barash*, 586 F. Supp. 2d at 1325. "Moreover, courts may enjoin not only

---

[4] Though Rule 41(b) refers specifically to dismissal on a defendant's motion, "[a] federal district court has the inherent power to dismiss a case *sua sponte* under Federal Rule of Civil Procedure 41(b) if the plaintiff fails to comply with a court order." *Rodriguez v. Lawson*, 848 F. App'x 412, 413 (11th Cir. 2021) (citing *Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1337–38 (11th Cir. 2005)).

the abusive litigant, but also those working in concert with them, or at the behest of the litigant." *Id*. (citing *Martin–Trigona*, 986 F.2d at 1387–89).

"The only restriction . . . upon injunctions designed to protect against abusive and vexatious litigation is that a litigant cannot be 'completely foreclosed from <u>any</u> access to the court.'" *Martin-Trigona*, 986 F.2d at 1387 (quoting *Procup*, 792 F.2d at 1074 (emphasis in *Procup*)); *see also Lietzke*, 2023 WL 11818130, at *8. Hence, sanctions must be narrowly tailored to protect the court from continued vexatious conduct while minimizing the exclusion of valid lawsuits. *Smith v. Thomas*, No. 2:25-cv-311-RAH-JTA, 2025 WL 1738664, at *2 (M.D. Ala. June 23, 2025) (citations omitted), *report and recommendation adopted*, No. 2:25-cv-00311-RAH, 2025 WL 1932736 (M.D. Ala. July 14, 2025); *see also Miller v. Donald*, 541 F.3d 1091, 1096–97 (11th Cir. 2008) (recognizing the necessity of narrowly tailoring methods to prevent vexatious litigation while "minimizing the exclusion of valid claims" and avoiding "shutting the courthouse door" by placing an absolute bar on a litigant's future filings).

### III.    PROCEDURAL HISTORY

Gregory Kelly is a repeat litigant who has filed at least twenty-five *pro se* cases in this Court, with all but one filed since March 14, 2024. The vast majority of those complaints have been dismissed due to shotgun pleading errors or because of his failure to comply with orders.[5] On May 1, 2025, for reasons the Court will not discuss again in detail,

---

[5] The undersigned need not canvas every action filed by Gregory Kelly to precisely tally the cases that were dismissed for shotgun pleading errors or failure to comply with court orders. The

the undersigned recommended Gregory Kelly be declared a vexatious litigant for his prolific filing of shotgun complaints and repeated failure to comply with orders to correct his shotgun pleading errors. *Kelly v. Water Works*, 2025 WL 1461271, at \*\*1, 6. On May 21, 2025, United States District Judge R. Austin Huffaker adopted the recommendation and declared Gregory Kelly a vexatious litigant. *Kelly v. Water Works*, 2025 WL 1461271, at \*1. As recommended, Judge Huffaker ordered: "As a consequence of [Gregory] Kelly's vexatious filing of shotgun pleadings, in the event [he] files a shotgun complaint in the future, after appropriate review, the Court will summarily dismiss the pleading and the action without prejudice." *Id*. Notwithstanding, Gregory Kelly continued to file shotgun pleadings in his name, which the court summarily dismissed. *See*, *e.g.*, *Kelly v. The Retirement System of Ala.*, Case No. 2:25-cv-549-RAH-JTA; *Kelly v. Ala. Dep't of Human Serv's.*, 2:25-cv-649-RAH-SMD; *Kelly v. Ala. Department of Insurance*, 2:25-cv-767-RAH-KFP.

Since that time, Gregory Kelly has begun filing shotgun complaints signed by himself and Annette Kelly as co-plaintiffs.[6] Three of the cases brought by both Plaintiffs are now before the undersigned: *Kelly v. Montgomery Real Estate, LLC,* Case No. 2:25-cv-733-MHT-JTA; *Kelly v. State Farm Insurance Company*, Case No. 2:25-cv-795-ECM-JTA;

---

undersigned is extensively familiar with Gregory Kelly's litigation history in this court and takes judicial notice of the Court's records.

[6] Annette Kelly also filed at least two similar complaints on her own. *See*, *e.g.*, *Kelly v. Alfa Mutual Insurance*, Case No. 2:24-cv-701-MHT-SMD; *Kelly v. Air Condition by Luquire, Inc.*, Case No. 25-cv-703-MHT-CWB.

and *Kelly v. Alabama State Port Authority*, Case No. 2:25-cv-825-RAH-JTA. In each of these three cases, the court explained why the initial complaints were shotgun pleadings.[7] In each case, the court entered orders allowing Plaintiffs an opportunity to amend because Annette Kelly had not been declared a vexatious litigant.[8] The orders set a deadline for amendment and provided instructions for complying with Rule 8(a) of the Federal Rules of Civil Procedure and the pleading standards established by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Each order requiring amendment warned Plaintiffs failure to timely file an amended complaint may constitute grounds for sanctions, including dismissal with or without prejudice for failure to prosecute and failure to comply with the court's orders. The orders requiring amendment also expressly warned Annette Kelly that, should she join in any other shotgun complaint filed by Gregory Kelly in this or any other action, the action may be summarily dismissed without prejudice and without further opportunity to amend, or she may face a recommendation that she be declared a vexatious litigant.

---

[7] *Kelly v. Montgomery Real Estate, LLC*, Case No. 2:25-cv-733-MHT-JTA (Doc. No. 5 (September 17, 2025 order to amend the complaint)); *Kelly v. State Farm Ins. Co.*, Case No. 2:25-cv-795-ECM-JTA (Doc. No. 5 (October 8, 2025 order to show cause and setting a status conference)); *Kelly v. Ala. State Port Auth.*, Case No. 2:25-cv-825-RAH-JTA (Doc. No. 4 (October 17, 2025 order to amend the complaint)).

[8] *Kelly v. Montgomery Real Estate, LLC*, Case No. 2:25-cv-733-MHT-JTA (Doc. No. 5 (September 17, 2025 order to amend the complaint)); *Kelly v. State Farm Ins. Co.*, Case No. 2:25-cv-795-ECM-JTA (Doc. No. 11 (October 17, 2025 order to amend the complaint)); *Kelly v. Ala. State Port Auth.*, Case No. 2:25-cv-825-RAH-JTA (Doc. No. 4 (October 17, 2025 order to amend the complaint)).

Plaintiffs failed to comply with the court's orders. They filed amended complaints that were shotgun complaints. In all three cases, the court (1) ordered Plaintiffs to show cause why their conduct should not be sanctioned and why the case should not be dismissed, (2) ordered Annette Kelly to show cause why she should not be declared a vexatious litigant for participating in Gregory Kelly's continued vexatious conduct, and (3) set an in-person status conference to address the court's concerns regarding Plaintiffs' vexatious conduct and ongoing violation of court orders.[9]

In two of the three cases, Plaintiffs responded to the show cause orders with incoherent filings.[10] In the third case, *Kelly v. Alabama State Port Authority*, Case No. 2:25-cv-825-RAH-JTA, Plaintiffs failed to show cause as ordered.

On October 17, 2025, in two of the three cases, Plaintiffs filed a motion entitled "Plaintiffs' Request a Stay Order and/or Request for Mental Health Breaks Due to Mental Illness."[11] That motion, which was largely incoherent, contained allegations concerning an

---

[9] *Kelly v. Montgomery Real Estate, LLC*, Case No. 2:25-cv-733-MHT-JTA (Doc. No. 12 (October 8, 2025 order to show cause and setting a status conference)); *Kelly v. State Farm Ins. Co.*, Case No. 2:25-cv-795-ECM-JTA (Doc. No. 5 (October 8, 2025 order to show cause and setting a status conference)); *Kelly v. Ala. State Port Auth.*, Case No. 2:25-cv-825-RAH-JTA (Doc. No. 4 (October 17, 2025 order to amend the complaint and setting a status conference)).

[10] *Kelly v. Montgomery Real Estate, LLC*, Case No. 2:25-cv-733-MHT-JTA (Doc. No. 14 (Plaintiffs' October 17, 2025 filing entitled "Response to Court Order And The Plaintiffs Oppose the Court's Libeling and Defaming Vexatious Tag Cause By a Two-Tier Unequal Judicial Legal System" (sic)); *Kelly v. State Farm Ins. Co.*, Case No. 2:25-cv-795-ECM-JTA (Doc. No. 12 (Plaintiffs' October 20, 2025 filing entitled "Response to Court order and the Plaintiffs Oppose the Court's Libeling and Defaming Vexatious Tag" (sic))).

[11] *Kelly v. Alabama State Port Auth.*, Case No. 2:25-cv-825-RAH-JTA (Doc. No. 7); *Kelly v. State Farm Ins. Co.*, Case No. 2:25-cv-795-ECM-JTA (Doc. No. 14).

alleged Italian mob conspiracy spanning from Alabama to New York bearing no clear connection to the relief sought in the motion.[12] The motion did clearly indicate, however, that Plaintiffs sought a stay of these cases because Annette Kelly suffered various medical issues. The motion introduced concerns about Annette Kelly's competency[13] to prosecute her cases on her own behalf and to attend the October 29, 2025 in-person status conference. Specifically, Plaintiffs' motion and the attached exhibit from Annette Kelly's mental health care provider called into question her ability to prosecute her claims due to significant memory loss and other mental health issues.[14] Her competency is of particular concern in

---

[12] Plaintiffs allege the conspiracy includes "458 state agencies." They state: "What was the motive behind the take down the NYC Gambino and Genovese crime families, it appears to be a 'symbolic takedown,' by the Alabama Machine (secret society) of state gang members." *Kelly v. Alabama State Port Auth.*, Case No. 2:25-cv-825-RAH-JTA (Doc. No. 7 at 7); *Kelly v. State Farm Ins. Co.*, Case No. 2:25-cv-795-ECM-JTA (Doc. No. 14 at 7).

[13] Competency, in the legal sense, refers to a "particular party's ability to protect h[er] interests in the litigation adequately." 6A *Wright & Miller's Federal Practice & Procedure* § 1570 (3d ed.). In this context, a finding of incompetency is not an epithet or personal or moral judgment, but simply a finding that, due to physical, mental, or legal disability, an individual is unable to protect their own interests in the litigation without assistance. The competency of an individual to sue or be sued is determined by the law of the individual's domicile, which, for Annette Kelly, is Alabama. (Doc. No. 8 at 2 ¶ 2.) *See* Fed. R. Civ. P. 17(b)(1); *Scannavino v. Fla. Dep't of Corr.*, 242 F.R.D. 662, 663 (M.D. Fla. 2007) (explaining the relationship between capacity to sue, which is governed by Fed. R. Civ. P. 17(b), and competency to sue, which is discussed in Fed. R. Civ. P. 17(c), and why the law of an individual's domicile governs both); *see also* 6A *Wright & Miller's Federal Practice & Procedure* § 1570 (3d ed.) ("State law controls the question whether the represented party's disability has ended during the action.").

[14] The court's October 28, 2025 orders continuing the status conference contain a detailed explanation of the competency concerns that were evident on the face of Plaintiffs' motion. *Kelly v. Montgomery Real Estate, LLC*, Case No. 2:25-cv-733-MHT-JTA (Doc. No. 15 at 2–4 (October 28, 2025 order continuing the status conference)); *Kelly v. State Farm Ins. Co.*, Case No. 2:25-cv-795-ECM-JTA (Doc. No. 17 at 2–4 (October 28, 2025 order continuing the status conference)); *Kelly v. Ala. State Port Auth.*, Case No. 2:25-cv-825-RAH-JTA (Doc. No. 8 at 2–4 (October 28, 2025 order continuing the status conference)).

these cases because she is appearing *pro se*. Her co-plaintiff and primary caregiver, Gregory

Kelly, is also *pro se* and thus cannot represent her, nor can he appear as her guardian or

next friend without the aid of counsel.[15] Although the motions did not expressly request a

continuance of the October 29, 2025 status conference,[16] the court granted the motions to

stay to the extent that, in all three cases, the court continued the in-person status conference

until November 18, 2025.[17] The Court further ordered Annette Kelly to show cause on or

---

[15] Rule 17(c) of the Federal Rules of Civil Procedure provides that the following may sue or defend as representatives on behalf of a minor or an incompetent person: (1) a general guardian, committee, conservator, or "like fiduciary," or (2) a next friend or guardian *ad litem*. However, the representative must either be an attorney or appear through one. *See* 28 U.S.C. § 1654; *Whitehurst v. Wal-Mart*, 306 F. App'x 446, 449 (11th Cir. 2008); *Dickerson v. Ray*, No. 2:23-cv-315-MHT-JTA, 2023 WL 9183965, at *1 n.1 (M.D. Ala. Dec. 22, 2023)). The rule against *pro se* representatives "ensure[s] that the interests of third parties are not put at risk or irrevocably bound" by a representative "who does not have the training and experience to best protect those interests, and who is not subject to the same disciplinary consequences as would be an attorney for unethical or incompetent representation." *Sullivan v. Prattville Health & Rehab., LLC*, No. 3:22-cv-702-RAH-JTA, 2023 WL 2816850, at *1 (M.D. Ala. Apr. 6, 2023).

[16] If anything, the motion indicated Plaintiffs' desire to participate in the in-person status conference. Plaintiffs acknowledged the court set the status conference to address their vexatious conduct, and they demanded due process and an opportunity to be heard on that issue. Plaintiffs stated that, for the upcoming status conference, they "were hopeful of in engaging in constrictive process with the Court to understand how the disability affects the Plaintiffs ability to state their claims clearly." *Kelly v. Alabama State Port Auth.*, Case No. 2:25-cv-825-RAH-JTA (Doc. No. 7 at 5–6 (sic)); *Kelly v. State Farm Insurance Co.*, Case No. 2:25-cv-795-ECM-JTA (Doc. No. 14 at 5–6 (sic)). Plaintiffs also submitted other filings extensively detailing topics and questions they demanded to discuss at the status conference, including the issue of vexatious litigant designations. *Kelly v. Montgomery Real Estate, LLC*, Case No. 2:25-cv-733-MHT-JTA (Doc. No. 14); *Kelly v. State Farm Ins. Co.*, Case No. 2:25-cv-795-ECM-JTA (Docs. No. 8, 12).

[17] *Kelly v. Montgomery Real Estate, LLC*, Case No. 2:25-cv-733-MHT-JTA (Doc. No. 15 at 4–5 (October 28, 2025 order continuing the status conference)); *Kelly v. State Farm Ins. Co.*, Case No. 2:25-cv-795-ECM-JTA (Doc. No. 17 at 4–5 (October 28, 2025 order continuing the status conference)); *Kelly v. Ala. State Port Auth.*, Case No. 2:25-cv-825-RAH-JTA (Doc. No. 8 at 4–5 (October 28, 2025 order continuing the status conference)).

before November 10, 2025, why the court should not find her incompetent to proceed in this action on her own behalf. [18] Further, the court warned Plaintiffs:

> *Failure to comply with this order or any other court order or attend the in-person status conference may result in sanctions, which could include monetary sanctions, a recommendation of dismissal of this action with or without prejudice, or other sanctions appropriately designed to prevent future violations of court orders.* [19]

On November 10, 2025, in two cases, Plaintiffs filed a document entitled "Plaintiffs' 2nd Request for A Stay Order and/or Request for Mental Health Breaks Due to Mental Illness."[20] That motion was also largely incoherent. Nevertheless, it was possible to conclude from Plaintiffs' motion they again sought a general stay of the case or "mental health breaks" for an unspecified duration. As in the previous motion, Plaintiffs did not expressly seek a continuance of the upcoming status conference. Plaintiffs sought the stay due to Annette Kelly's previously-asserted physical and mental health conditions. Additionally, Plaintiffs alleged Annette Kelly was "recovering from kidney stones," was

---

[18] *Kelly v. Montgomery Real Estate, LLC*, Case No. 2:25-cv-733-MHT-JTA (Doc. No. 15 at 5 (October 28, 2025 order continuing the status conference)); *Kelly v. State Farm Ins. Co.*, Case No. 2:25-cv-795-ECM-JTA (Doc. No. 17 at 5 (October 28, 2025 order continuing the status conference)); *Kelly v. Ala. State Port Auth.*, Case No. 2:25-cv-825-RAH-JTA (Doc. No. 8 at 5 (October 28, 2025 order continuing the status conference)).

[19] *Kelly v. Montgomery Real Estate, LLC*, Case No. 2:25-cv-733-MHT-JTA (Doc. No. 15 at 5 (October 28, 2025 order continuing the status conference, emphasis in original)); *Kelly v. State Farm Ins. Co.*, Case No. 2:25-cv-795-ECM-JTA (Doc. No. 17 at 5 (October 28, 2025 order continuing the status conference, emphasis in original)); *Kelly v. Ala. State Port Auth.*, Case No. 2:25-cv-825-RAH-JTA (Doc. No. 8 at 5 (October 28, 2025 order continuing the status conference, emphasis in original)).

[20] *Kelly v. State Farm Ins. Co.*, Case No. 2:25-cv-795-ECM-JTA (Doc. No. 20); *Kelly v. Ala. State Port Auth.*, Case No. 2:25-cv-825-RAH-JTA (Doc. No. 11).

grieving her late sister's passing, had been advised by her doctor not to travel to the funeral in Kentucky,[21] and suffered unspecific "mounting medical and personal issues" that were causing her a "major health care crisis." In support of their motion, Plaintiffs attached the same letter from Annette Kelly's mental health care provider as they had attached to their previous motion to stay. On November 14, 2025, the court denied the motion, reiterated that "Plaintiffs shall appear at the status conference that remains scheduled for November 18, 2025," and directed the courtroom deputy to contact Plaintiffs by telephone to inform them the motion has been denied.[22]

On November 14, 2025, in all three cases, Plaintiffs filed another document entitled "Plaintiffs' 2nd Request for A Stay Order and/or Request for Mental Health Breaks Due to Mental Illness."[23] As in the previous motion, Plaintiffs requested a general stay of the case but did not clearly and expressly seek a continuance of the upcoming status conference

---

[21] Based on the allegations in Plaintiffs' pleadings and the address they provided the court for service, Plaintiffs live in Montgomery, Alabama. The court takes judicial notice their address is approximately eight miles and less than fifteen minutes by car from this courthouse. (*See* Docket Sheet; Doc. No. 1.) As of the date of this Recommendation, they were last observed at the courthouse on November 17, 2025, the day before the scheduled status conference.

[22] *Kelly v. State Farm Ins. Co.*, Case No. 2:25-cv-795-ECM-JTA (Doc. No. 21); *Kelly v. Ala. State Port Auth.*, Case No. 2:25-cv-825-RAH-JTA (Doc. No. 12). Usually, the court does not direct the courtroom deputy to inform litigants about the entry of orders. However, the court was mindful its order was entered on a Friday four days before the scheduled status conference. Because *pro se* plaintiffs do not have access to the court's e-filing system and receive notice of court action by mail, the court took the unusual measure in this instance to ensure Plaintiffs would be aware of the court's ruling prior to the date of the scheduled status conference.

[23] *Kelly v. Montgomery Real Estate, LLC*, Case No. 2:25-cv-733-MHT-JTA (Doc. No. 17); *Kelly v. State Farm Ins. Co.*, Case No. 2:25-cv-795-ECM-JTA (Doc. No. 22); *Kelly v. Ala. State Port Auth.*, Case No. 2:25-cv-825-RAH-JTA (Doc. No. 13).

itself. Plaintiffs argued the motion on the same grounds as in the previous two motions and added allegations that Annette Kelly is now suffering an undescribed "life-threatening illness" and needs a stay "to allow [her] time to focus on treatment."[24] On November 16, 2025, the court set the motion for an in-person status conference on November 18, 2025, at 11:00 a.m., at the same time as the previously-set status conferences.[25] The court directed the courtroom deputy to inform both Plaintiffs of the order setting the motion for a status conference.

Throughout each case, in every written order setting a status conference, the court warned Plaintiffs failure to appear in person "may result in sanctions, which could include monetary sanctions, a recommendation of dismissal of the action with or without prejudice, or other sanctions appropriately designed to prevent future violations of court orders."[26]

On November 18, 2025, in accordance with its prior orders, the undersigned held a status conference in all three cases to address the following issues: (1) the nature of Plaintiffs' claims in each case; (2) Plaintiffs' justification, if any, for their continued conduct of filing shotgun complaints in violation of court orders; (3) whether Plaintiffs

---

[24] *Kelly v. Montgomery Real Estate, LLC*, Case No. 2:25-cv-733-MHT-JTA (Doc. No. 17 at 3); *Kelly v. State Farm Ins. Co*., Case No. 2:25-cv-795-ECM-JTA (Doc. No. 22 at 3); *Kelly v. Ala. State Port Auth*., Case No. 2:25-cv-825-RAH-JTA (Doc. No. 13 at 3).

[25] *Kelly v. Montgomery Real Estate, LLC*, Case No. 2:25-cv-733-MHT-JTA (Doc. No. 18); *Kelly v. State Farm Ins. Co*., Case No. 2:25-cv-795-ECM-JTA (Doc. No. 23); *Kelly v. Ala. State Port Auth*., Case No. 2:25-cv-825-RAH-JTA (Doc. No. 14).

[26] *Kelly v. Montgomery Real Estate, LLC*, Case No. 2:25-cv-733-MHT-JTA (Doc. No. 12 at 5; Doc. No. 15 at 5); *Kelly v. State Farm Ins. Co*., Case No. 2:25-cv-795-ECM-JTA (Doc. No. 5 at 5; Doc. No. 17 at 5); *Kelly v. Ala. State Port Auth*., Case No. 2:25-cv-825-RAH-JTA (Doc. No. 4 at 7; Doc. No. 8 at 5).

should face sanctions for continued violations of court orders, (4) Annette Kelly's competence to proceed on her own behalf; and (5) the November 14, 2025 motions to stay.[27] It was the undersigned's intention to provide Plaintiffs an opportunity to explain their arguments and positions on those subjects in open court.[28] The undersigned also hoped to gain some understanding of the basis of Plaintiffs' incoherent pleadings. Notwithstanding the undersigned's good intentions, Plaintiffs did not appear at the conference.[29]

Since filing their first motion to stay on grounds that Annette Kelly is too infirm to prosecute her cases or come to court, on three occasions, both Plaintiffs personally appeared at the courthouse to file new cases.[30] *See Kelly v. Alabama Department of Workforce*, Case No. 25-cv-844-BL-KFP (filed October 23, 2025, against twenty-seven defendants); *Kelly v. City of Montgomery Mayor's Office*, Case No. 2:25-cv-889-ECM-JTA

---

[27] *Kelly v. Montgomery Real Estate, LLC*, Case No. 2:25-cv-733-MHT-JTA (Doc. No. 17); *Kelly v. State Farm Ins. Co*., Case No. 2:25-cv-795-ECM-JTA (Doc. No. 22); *Kelly v. Ala. State Port Auth*., Case No. 2:25-cv-825-RAH-JTA (Doc. No. 13).

[28] Plaintiffs have suggested on several occasional that one or both of them has a disability that inhibits them from expressing their claims and arguments coherently in writing. *See, e.g., Kelly v. State Farm Ins. Co*., Case No. 2:25-cv-795-ECM-JTA (Doc. No. 12 at 2, 4 (opposing the vexatious litigant designation based on alleged "physical, mental and learning disabilities" and stating: "In Disability vs. vexatious behavior, the Honorable court continue to use discriminatory factors when determining whether vexatious behavior, actions and acts is a manifestation of the disability or a strategic abuse of the system." (emphasis omitted))). In addition to the usual benefits of in-person proceedings, the status conference also provided Plaintiffs an opportunity to explain their claims and arguments in an oral format.

[29] An attorney made a limited appearance on behalf of State Farm Insurance Company, which is the first-named Defendant in Case No. 2:25-cv-795-RAH-JTA.

[30] The undersigned has not inquired to determine if Plaintiffs were present at the courthouse on other occasions to file motions or other papers.

(filed November 10, 2025, against forty-four defendants); *Kelly v. The Water Works & Sanitary Sewer Board of the City of Montgomery*, Case No. 2:25-cv-909 (filed November 17, 2025, against nine defendants). Notably, Plaintiffs filed the last of those three cases in person the day before they failed to appear at the November 18, 2025 status conference.

## IV.    DISCUSSION

A.    Motion for Stay

The court has done all it can to provide Plaintiffs with opportunities to comply with court orders and prosecute their cases. Even so, they have been unable to provide even a short, plain, coherent statement of their claims. Plaintiffs offer no reasonable, definite timeline for when Annette Kelly's alleged health and other issues will cease to be an impediment to her ability to proceed with this litigation. The undersigned is not insensitive to Annette Kelly's medical issues and personal difficulties. Nonetheless, in considering whether to enter a stay, the court must "weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254.

Despite Annette Kelly's health issues, it is improbable a stay will provide her any benefit, since "[i]t does not appear . . . a further extension will enable [her] to file a short, plain statement of [her] claims by a reasonable deadline." *Sullivan v. Prattville Health & Rehab., LLC*, No. 3:22-cv-702-RAH-JTA, 2024 WL 2755683, at *6 (M.D. Ala. May 29, 2024), *reconsideration denied*, No. 3:22-cv-702-RAH-JTA, 2024 WL 3103673 (M.D. Ala. June 24, 2024), *and report and recommendation adopted*, No. 3:22-cv-702-RAH, 2024 WL 3555366 (M.D. Ala. July 25, 2024). Yet, a stay "will cause delay on the court's docket and prejudice the numerous [d]efendants in their ability to move forward with their defense of

the case." (*Id.*) "This action cannot remain dormant indefinitely on the docket simply because the vicissitudes of life prevent [Annette Kelly] from complying with court orders, filing an amended pleading that complies with the Rules of Civil Procedure . . . , and prosecuting [her] case." *Sullivan v. City of Dadeville*, No. 3:22-cv-653-ECM-JTA, 2025 WL 2604493, at *3 (M.D. Ala. May 15, 2025), *report and recommendation adopted*, No. 3:22-cv-653-ECM, 2025 WL 2336108 (M.D. Ala. Aug. 13, 2025). Similarly, pausing and resuming this litigation for "mental health breaks" at unpredictable intervals is impractical and prejudicial to the court and the other litigants. *Cf. Prattville Health*, 2024 WL 2755683, at *6 ("Defendants are not expected to wait indefinitely at every juncture in this lawsuit for Plaintiff to first wrangle his cattle, finances, other litigation, health, and other matters.").

As for Gregory Kelly, his filings in his many cases, including this one, include allegations he suffers from mental and physical disabilities. He also contends he is Annette Kelly's primary caregiver. However, those facts have not hindered his ongoing proliferation and pursuit of his many *pro se* cases. Therefore, the court finds no reason preventing him from proceeding with this matter.

Moreover, after Plaintiffs filed their first motion seeking a stay on grounds that Annette Kelly is too infirm to prosecute her own cases, Annette Kelly filed three new actions in this court against a total of eighty defendants.  She filed those actions together with Gregory Kelly in person at the courthouse. Since she is well enough to proceed in complex cases before other judges, her excuses for needing a stay in the actions before the undersigned ring hollow. It has not escaped the undersigned's attention that Plaintiffs only began filing serial, increasingly urgent motions for a stay after the undersigned set status

conferences to address Gregory Kelly's vexatious conduct and Annette Kelly's knowing cooperation. In other words, that Plaintiffs requested stays only in the cases which required them to appear in open court belies their requests. Their actions of filing new cases after seeking stays in the matters before the undersigned speaks volumes.

In sum, the court finds Annette Kelly's medical conditions and other difficulties do not warrant a stay, and the motion to stay is due to be denied.

B.    Dismissal of Plaintiffs' Claims

"Regardless of the merits (if any) of Plaintiff[s'] claims, this case simply cannot proceed without a serviceable complaint, and Plaintiff[s] [have] demonstrated [they] cannot produce one in compliance with the court's orders, instructions, and deadlines." *Prattville Health*, 2024 WL 2755683, at *10. Further, Plaintiffs failed to appear at the November 18, 2025 status conference despite warnings that failure to appear could result in sanctions, including dismissal. Plaintiffs' "failure to comply with court orders is persistent and there is a clear record of delay despite the court's many efforts to prod [them] to comply with reasonable deadlines and timely participate in the litigation of [their] case." *Id.* at *11. Dismissal without prejudice "is the only viable option remaining at this point," as lesser sanctions have proven insufficient. *Dadeville*, 2025 WL 2604493, at *3. Accordingly, this action is due to be dismissed without prejudice. *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985) ("The legal standard to be applied under Rule 41(b) is whether there is a 'clear record of delay or willful contempt and a finding that lesser sanctions would not suffice.'"); *Prattville Health*, 2024 WL 2755683, at *10.

C.    Sanctions for Vexatious Conduct

On May 21, 2025, when Judge Huffaker declared Gregory Kelly a vexatious litigant upon the undersigned's recommendation, he ordered: "As a consequence of Kelly's vexatious filing of shotgun pleadings, in the event [he] files a shotgun complaint in the future, after appropriate review, the Court will summarily dismiss the pleading and the action without prejudice." *Kelly v. Water Works*, No. 2025 WL 1461271, at *1. Afterward, Gregory Kelly continued his vexatious conduct by initiating new actions with shotgun complaints. Those actions filed in his own name were summarily dismissed. *See*, *e.g.*, *Kelly v. The Ret. Sys. of Ala.*, Case No. 2:25-cv-549-RAH-JTA; *Kelly v. Ala. Dep't of Human Serv's.*, 2:25-cv-649-RAH-SMD; *Kelly v. Ala. Department of Insurance*, 2:25-cv-767-RAH-KFP. Undeterred, Gregory Kelly began filing shotgun complaints jointly with Annette Kelly.

Annette Kelly has cosigned Gregory Kelly's pleadings and motions. She has even come to the courthouse with him in person to participate in filing documents before the court. Furthermore, Plaintiffs' shotgun complaints now before the court share uncanny similarities with complaints Gregory Kelly filed in his own name. They share identical typeface, diction, format, style, spelling errors, and other peculiarities unique to Gregory Kelly's solo pleadings.[31] *See Martin-Trigona*, 986 F.2d 1384, 1388 (11th Cir. 1993)

---

[31] For example, Gregory Kelly has consistently made incoherent, fantastical allegations of conspiracies concerning monopolies, pedophile rings, and wire and mail fraud conspiracies against persons who are elderly, disabled, or of racial minorities. His complaints filed with Annette Kelly contain many of the same linguistic errors as complaints he filed alone, such as the term "Gender base violence (GBV) cruelty crimes." Several of his complaints in the three cases at issue and in actions he filed alone contain the following misspelled caption: "COMPLIANT AND JURY

(affirming a district court's conclusion that the vexatious litigant's mother filed a lawsuit on his behalf or at his instigation based in part on the "similarity of the pleadings and theories" in the pleadings). Based on these facts, the undersigned finds Annette Kelly joined this lawsuit "at [Gregory Kelly's] behest, at his direction or instigation . . . in concert with him," or otherwise in cooperation with him. *Martin-Trigona*, 986 F. 2d at 1387. The undersigned further finds Gregory Kelly joined Annette Kelly as co-plaintiff in an attempt to continue his vexatious conduct while avoiding the consequences for doing so.

When abusive litigants enlist the cooperation of others in furtherance of their vexatious litigiousness, courts may craft appropriate remedies to limit not only the vexatious litigant's conduct, but the conduct of those participating in cooperation with or at the direction of the vexatious litigant. *Martin-Trigona*, 986 F.2d at 1387. For example, in *Martin-Trigona*, the Eleventh Circuit enforced an injunction on a vexatious litigant that had been crafted by the United States District Court in Connecticut. *Id*. That injunction prohibited "Anthony Martin–Trigona from filing or attempting to initiate any new lawsuit in any federal court in the United States, with exceptions not applicable here, without first obtaining leave of that federal court." *Id*. It further required that, "if he sought such leave," he must "file with the complaint or other pleading specified documents disclosing to the court some relevant parts of his litigation history both in general and as it relates to the

---

TRIAL DEMANDED" (sic). *See, e.g.*, *Kelly v. Ala. State Port Auth.*, Case No. 2:25-cv-825-RAH-JTA (Doc. No. 1 at 2); *Kelly v. Ala. Dept. of Insurance*, Case No. 2:25-cv-767-RAH-KFP (Doc. No. 1 at 1). Even Annette Kelly's solo pleadings share significant hallmarks of the same draftsmanship. *See, e.g.*, *Kelly v. Alfa Mutual Insurance*, Case No. 2:24-cv-701-MHT-SMD (Doc. No. 30); *Kelly v. Air Condition by Luquire, Inc.*, Case No. 25-cv-703-MHT-CWB (Doc. No. 1).

specific defendants and claims involved in the intended lawsuit." *Id*. "Realizing the resourcefulness of Anthony Martin–Trigona and the fact that he . . . had the active assistance of a number of allies in his assault upon the judicial system, the United States District Court in Connecticut expressly stated in its order that the injunction covered not only Anthony Martin–Trigona but also applied 'equally to persons or entities acting at his behest, at his direction or instigation, or in concert with him.'" *Id.* (quoting *In re Martin–Trigona*, 592 F. Supp. 1566 (D. Conn. 1984)).

Since the Eleventh Circuit's ruling in *Martin-Trigona*, district courts have imposed *Martin-Trigona* injunctions on vexatious litigants and their collaborators, requiring pre-filing screening of *pro se* complaints and allowing for imposition of sanctions in the event the sanctioned litigants file complaints without first seeking leave of court. *See*, *e.g.*, *Barash*, 586 F. Supp. 2d 1323; *Farrell v. Fla.*, No. 2:15-cv-41-FTM-38CM, 2015 WL 12830411, at *1 (M.D. Fla. May 21, 2015) ("A *Martin-Trigona* injunction order precludes a plaintiff from 'filing future complaints unless he has obtained leave of this Court to file a complaint *pro se* or the complaint is filed on his behalf by an attorney who is a member of the bar of this Court.'" (citation and internal quotation marks omitted)); *see also*, *e.g.*, *In re Soler*, 640 B.R. 774 at **7–8 (Bankr. S.D. Fla. 2022) (detailing *Martin-Trigona*-based pre-filing procedures to be implemented by the clerk of the court and the duty magistrate judge, including opening a miscellaneous case for docketing of all rejected complaints and the duty judge's orders rejecting those complaints).

To obtain a *Martin-Trigona* injunction, "it is sufficient to show a history of litigation entailing vexation, harassment, and needless burden on the courts and their supporting

personnel." *In re Dicks*, 306 B.R. 700, 705–06 (Bankr. M.D. Fla. 2004). As explained in *Kelly v. Water Works*, 2025 WL 1461271, Gregory Kelly has a demonstrated history of harassing, vexatious conduct that needlessly burdens the court and its staff. Now, he is continuing his vexatious conduct by enlisting an ally in his assault on the judicial resources of this court. Something must now be done.

Further, in considering whether to impose a *Martin-Trigona* injunction, the court has considered "(1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits, (2) the litigant's motive in pursuing the litigation, *e.g.*, does the litigant have an objective, good-faith expectation of prevailing, (3) whether the litigant is represented by counsel, (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel, and (5) whether other sanctions would be adequate to protect the courts and other parties." *Dicks*, 306 B.R. at 706 (citations omitted). The first four factors all weigh in favor of imposing appropriately-tailored prospective limits on Gregory Kelly's vexatious litigation. Upon considering the last factor, however, the undersigned recommends a less burdensome approach.

Specifically, the undersigned recommends the consequences of Gregory Kelly's vexatious conduct be expanded as follows: in the event Kelly or anyone acting in concert with him files a shotgun complaint in the future, after appropriate review, the Court will summarily dismiss the pleading and the action without prejudice. The proposed consequences are narrowly tailored to remedy the strain Gregory Kelly's conduct places on judicial resources without depriving him of his day in court. In general, the proposed

approach will not shut the courthouse door to Gregory Kelly or anyone acting in concert with him. It will not deprive him from seeking judicial relief for legally cognizable civil wrongs by filing a properly-pleaded complaint. In fact, despite summary dismissal where appropriate, the proposed consequences do not deprive Gregory Kelly or anyone acting in concert with him of amending a summarily dismissed shotgun pleading and refiling it.[32] The proposed consequence simply provides that, upon appropriate review, a United States District Judge may summarily dismiss a complaint without prejudice.

The recommended consequences are less onerous than a *Martin-Trigona* injunction. Neither Gregory Kelly nor anyone else is subject to an injunction requiring pre-filing clearance in this court. Without a pre-filing requirement, the court will have no need to divert judicial resources to enforce or address any violations of that requirement. *Cf. In re Martin-Trigona*, 139 B.R. at 70 (acknowledging "the strain of enforcing the [*Martin-Trigona*] injunction" as the price "to avoid the greater burden of improper suits being filed"). Further, Gregory Kelly nor anyone found to be acting in concert with him will be deprived of an opportunity for appellate review of the court's action. Finally, the right of public access to the records of Gregory Kelly's cases will be preserved.[33]

---

[32] Generally, the cost of litigation serves as a deterrent from filing frivolous lawsuits. *See Miller*, 541 F.3d at 1096 ("As the Supreme Court has noted, filing fees in theory discourage frivolous lawsuits and thus help allocate judicial resources to more meritorious cases."). That is not true here. The undersigned notes Gregory Kelly's history of paying the $405.00 filing fee in his cases, totaling $10,125.00. He has also paid thousands of dollars in service costs and fees.

[33] *See Pettaway v. Barber*, 645 F. Supp. 3d 1269, 1281 (M.D. Ala. 2022) (discussing the rationale behind the presumption in favor of public records, including protecting citizens' ability to keep a watchful eye on government and court operations, the public's right to understand the legal process, and public assurance of the fairness of the judicial process). With respect to vexatious litigants, publicly available records benefit not only the public, but the judicial system itself.

## IV.   CONCLUSION

Accordingly, it is ORDERED that "Plaintiffs' 2nd Request for A Stay Order and/or Request for Mental Health Breaks Due to Mental Illness" (Doc. No. 13) is DENIED.

Further, the undersigned RECOMMENDS the following:

1.   Plaintiffs' amended complaint (Doc. No. 5) be dismissed without prejudice for failure to comply with court orders and Rule 8(a)(2) of the Federal Rules of Civil Procedure.

2.   This action be dismissed without prejudice for failure to comply with court orders and failure to prosecute.

3.   As a consequence of Gregory Kelly's vexatious filing of shotgun pleadings, in the event Gregory Kelly or *anyone* acting in concert with him files a shotgun complaint in the future, after appropriate review, the court summarily dismiss the pleading and the action without prejudice.

**Plaintiff Annette B. Kelly is WARNED that further filing of shotgun complaints, whether or not filed in concert with Gregory Kelly, will result in a recommendation that she be found a vexatious litigant and that further restrictions be placed on her, personally, to prevent her continued vexatious conduct.**

Further, it is ORDERED that the parties shall file any objections to this Recommendation on or before **December 3, 2025**. A party must specifically identify the

---

Vexatious litigants often file cases in numerous jurisdictions. Providing public access to that information allows for consistent enforcement of remedies for vexatious conduct, particularly when related actions are filed in different jurisdictions.

factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Plaintiff is advised that this Recommendation is not a final order of the Court; therefore, it is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1; *see Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

The Clerk of Court is DIRECTED to provide a copy of this recommendation to Plaintiffs by regular mail and by certified mail, return receipt requested.

DONE this 19th day of November, 2025.

JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE